**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| TAMMY B. GEORGELAS, as Receiver for ROGER S. BLISS, an individual; and ROGER S. BLISS d/b/a ROGER BLISS AND ASSOCIATES EQUITIES, LLC, a Utah limited liability company; ROGER BLISS AND ASSOCIATES CLUB LLC; and BLISS CLUB LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES MICHAEL HILL, JR., et al.,<br><br>    Defendants. | **JOINT MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISQUALIFY**<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg<br><br>2:21-cv-00441-RJS-DAO |
| TAMMY B. GEORGELAS, as Receiver for ROGER S. BLISS, an individual; and ROGER S. BLISS d/b/a ROGER BLISS AND ASSOCIATES EQUITIES, LLC, a Utah limited liability company; ROGER BLISS AND ASSOCIATES CLUB LLC; and BLISS CLUB LLC;<br><br>    Plaintiff,<br><br>v.<br><br>DAVID HILL,<br><br>    Defendant. | 2:21-cv-00667-RJS-DAO |

Plaintiff in these cases is Tammy B. Georgelas, the Court-Appointed Receiver for Roger S. Bliss; Roger Bliss and Associates Equities, LLC; Roger Bliss and Associates Club LLC; and Bliss Club LLC (collectively, the Bliss Enterprise). The two above-captioned cases arise from the Receiver's efforts to pursue judgments obtained in ancillary cases against two net winners in

1

Bliss's scheme: Desert Hill Ventures, Inc. and Spring Grove Investments, LLC. In both cases, Defendants have filed Motions to Disqualify seeking the recusal of the undersigned.[1] For the reasons explained below, both Motions are DENIED.

## BACKGROUND AND PROCEDURAL HISTORY[2]

### I. The Main Receivership Case and Appointment of the Receiver

This case arises from Roger Bliss's Ponzi scheme, in which he created the illusion he profitably traded Apple stock while in fact transferring funds from old investors to new investors to perpetuate the scheme.[3] On February 11, 2015, the SEC filed a Complaint against Bliss in *SEC v. Bliss* (hereinafter the Main Receivership Case).[4] Bliss eventually pleaded guilty to securities fraud and a pattern of unlawful activity.[5]

On June 10, 2015, to protect Bliss's assets and the assets of entities abused by him, the court appointed the Receiver.[6] In the intervening years, the size of Bliss's Ponzi scheme was learned to be significantly larger than expected at the outset of the Receivership. At the outset, it

---

[1] *Georgelas v. Hill et al.*, No. 2:21-cv-00441, Dkt. 49 (Motion to Disqualify Judge); *Georgelas v. Hill*, No. 2:21-cv-00667, Dkt. 14 (Motion to Disqualify Judge).

[2] The court assumes the parties' familiarity with the underlying facts of Bliss's Ponzi scheme given the age and procedural posture of this longstanding case. For a fuller discussion of these underlying facts, *see SEC v. Bliss*, No. 2:15-cv-00098 [hereinafter Main Receivership Case], Dkt. 241 (Memorandum Decision and Order Granting the Receiver's Motion) at 1–3; *Georgelas v. Desert Hill Ventures*, No. 2:16-cv-00514, Dkt. 38 (Joint Memorandum Decision and Order Granting Plaintiff's Motions for Summary Judgment) at 2–5. Similarly, the court assumes the parties' familiarity with the procedural history of the Main Receivership Case as well as the relevant ancillary suits. The court will only rehearse the procedural history relevant to the instant Motions to Disqualify.

[3] *See* Main Receivership Case, Dkt. 1 (Complaint) ¶¶ 1–3; 11–30.

[4] *See id.*

[5] *See* Main Receivership Case, Dkt. 129 (Consent to Entry of Judgment). Bliss also pleaded guilty in state court to four second degree securities fraud felonies and one second degree pattern of unlawful activity. *See* Main Receivership Case, Dkt. 128 (Notice of Judgment, Sentence, and Commitment of Roger S. Bliss). Earlier in the proceedings, Bliss was held in contempt of court for making false statements in a sworn declaration. *See* Main Receivership Case, Dkt. 84 (Memorandum Decision and Order).

[6] Main Receivership Case, Dkt. 39 (Order Granting Motion to Appoint Receiver). Following extensive litigation concerning a standing issue raised by Defendants including David Hill, the court modified its Order Appointing a Receiver, clarifying the Receiver has standing to pursue lawsuits against net winners. *See* Main Receivership Case, Dkt. 241 (Memorandum Decision and Order Granting the Receiver's Motion).

was believed the Receivership Defendants had losses of approximately $3,300,000 owed to about forty investors. Following extensive investigation by the SEC and the Receivership, it was learned losses exceeded $21,000,000 and affected over 150 investors.[7]

## II. Ancillary Suits Against David Hill, Desert Hill Industries Inc., and Spring Grove Investments, LLC

In multiple civil suits, the Receiver has sought to recoup money she alleges Bliss caused abused entities to distribute to established investors. Relevant here, the Receiver brought suits against David Hill,[8] Desert Hill Ventures, Inc.,[9] and Spring Grove Investments, LLC.[10] The Receiver alleged all three were net winners, that is, they had received payments from the Bliss Enterprise in excess of the amount they had invested.[11] Specifically, Desert Hill had been hired by Bliss to perform administrative and ministerial services for the Bliss Enterprise, and received a total of $317,000 in a series of monthly payments.[12] David Hill, as president of Desert Hill, worked full time for the Bliss Enterprise and, in addition to payments made to Desert Hill, was directly compensated $30,000 for his services and received remodeling work on his home paid

---

[7] *See, e.g.*, Main Receivership Case, Dkt. 317 (Notice of Seventh Application for Interim Compensation of Receiver and Professionals) ¶¶ 7–8.

[8] *See Georgelas v. Hill*, No. 2:16-cv-00522, Dkt. 2 (Complaint).

[9] *See Georgelas v. Desert Hill Ventures*, No. 2:16-cv-00514, Dkt. 2 (Complaint).

[10] *See Georgelas v. Spring Grove Investments*, No. 2:16-cv-00534, Dkt. 2 (Complaint).

[11] *See Georgelas v. Desert Hill*, No. 2:16-cv-00514, Dkt. 2 (Complaint) ¶¶ 21–24; *Georgelas v. Hill*, No. 2:16-cv-00522, Dkt. 2 (Complaint) ¶¶ 21–24; *Georgelas v. Spring Grove Investments*, No. 2:16-cv-00534, Dkt. 2 (Complaint) ¶¶ 21–24.

[12] *See Georgelas v. Desert Hill*, No. 2:16-cv-00514, Dkt. 38 (Joint Memorandum Decision and Order Granting Plaintiff's Motions for Summary Judgment) at 4–5.

for by Bliss.[13] Spring Grove is a Texas limited liability company[14] which received substantial returns from its investments in the Bliss Enterprise.[15]

On November 30, 2020, the undersigned granted summary judgment to the Receiver against Spring Grove, finding that the Bliss Enterprise was a Ponzi scheme and that Spring Grove received fraudulent transfers from Bliss as defined by the Utah Fraudulent Transfer Act (UFTA).[16] On January 4, 2021, the undersigned granted summary judgment to the Receiver against both David Hill and Desert Hill in a Joint Memorandum Decision and Order, again finding that the Bliss enterprise was a Ponzi scheme, and that both David Hill and Desert Hill received fraudulent transfers as defined by the UFTA.[17] In granting summary judgment against David Hill and Desert Hill, the court assumed—without making factual findings on the issue— that David Hill had acted in good faith.[18] Nonetheless, because the Ponzi presumption applied, the court found that because the transfers from Bliss to Hill had not been exchanged for "reasonably equivalent value," the transfers were fraudulent under the UFTA.[19]

Following the summary judgment rulings, the court entered Orders of Final Judgment against Desert Hill in the total amount of $356,552.13,[20] David Hill in the total amount of

---

[13] *Id.* at 5.

[14] *See Georgelas v. Spring Grove Investments*, No. 2:16-cv-00534, Dkt. 2 (Complaint) ¶ 4.

[15] *See Georgelas v. Spring Grove Investments*, No. 2:16-cv-00534, Dkt. 43 (Memorandum Decision and Order Granting Motion for Summary Judgment) at 5.

[16] *See id.*

[17] *See Georgelas v. Desert Hill Ventures*, No. 2:16-cv-00514, Dkt. 38 (Joint Memorandum Decision and Order Granting Plaintiff's Motions for Summary Judgment); *see also Georgelas v. Hill*, No. 2:16-cv-00522, Dkt. 36 (Joint Memorandum Decision and Order Granting Plaintiff's Motions for Summary Judgment).

[18] *Georgelas v. Desert Hill Ventures*, No. 2:16-cv-00514, Dkt. 38 (Joint Memorandum Decision and Order Granting Plaintiff's Motions for Summary Judgment) at 19.

[19] *Id.* at 18–23.

[20] *Georgelas v. Desert Hill Ventures*, No. 2:16-cv-00514, Dkt. 46 (Final Judgment).

$161,327.13,[21] and Spring Grove in the total amount of $879,150.82.[22]  The court subsequently ordered the Receiver to undertake any collection efforts on the judgments in the Main Receivership Case.[23]

### III. Supplemental Proceedings Against David Hill, Desert Hill, and Spring Grove

On March 11, 2021, the Receiver moved for supplemental proceedings in the Main Receivership Case to obtain discovery concerning the assets of David Hill, Desert Hill, and Spring Grove.[24]  The Receiver further moved to enjoin those parties from transferring or alienating any of their assets.[25]  David Hill and Desert Hill filed a combined opposition to the Receiver's motions,[26] and Spring Grove filed its own opposition.[27]  Following additional briefing,[28] Magistrate Judge Jared C. Bennett granted the Receiver's Motions in part.[29]  Specifically, Judge Bennett granted the portion of the Receiver's Motions requesting hearings and the production of documents as to David Hill's, Desert Hill's, and Spring Grove's respective assets, but denied them without prejudice insofar as they sought to preclude the parties from transferring or alienating their assets.[30]

---

[21] *Georgelas v. Hill*, No. 2:16-cv-00522, Dkt. 44 (Final Judgment).

[22] *Georgelas v. Spring Hill Investments*, No. 2:16-cv-00534, Dkt. 44 (Final Judgment).

[23] *See* Main Receivership Case, Dkt. 273 (Docket Text Order).

[24] Main Receivership Case, Dkts. 269, 270, 271 (Motions for Supplemental Proceedings).

[25] *See, e.g.*, Main Receivership Case, Dkt. 269 (Motion for Supplemental Proceedings) at 7.

[26] Main Receivership Case, Dkt. 272 (David Hill and Desert Hill Ventures, Inc.'s Verified Opposition to Receiver's Motions).

[27] Main Receivership Case, Dkt. 290 (Response to Receiver's Motion).

[28] Main Receivership Case, Dkt. 277 (Receiver's Reply in Support of Supplemental Proceedings); Dkt. 282 (David Hill and Desert Hill's Objection to Evidence Submitted in Receiver's Reply Memorandum); Dkt. 287 (David Hill and Desert Hill's Sur-Reply).

[29] Main Receivership Case, Dkt. 294 (Memorandum Decision and Order Granting in Part and Denying in Part Motions for Supplemental Proceedings).

[30] *Id.* at 5–7.

Subsequently, supplemental proceedings and debtor examinations were scheduled for Desert Hill[31] and Spring Grove,[32] to take place on May 26 and May 27, 2021, respectively. The court ordered Desert Hill and Spring Grove to produce, "no later than 14 days prior to the hearing date," all of their "financial books and records, however maintained (e.g., QuickBooks, Sage, etc.) in original file format, including all metadata, cumulative for the six years prior to the date of entry of the Judgment."[33] Meanwhile, the Receiver and David Hill reached an agreement to stay enforcement of the judgment against David Hill,[34] with a deed of trust over Hill's home used as an alternative to a bond,[35] and the court vacated the supplemental proceeding against David Hill.[36]

### IV. Zoom Status Conference Concerning Supplemental Proceedings

On May 25, 2021, the day before the Desert Hill supplemental proceeding was set to take place, the court became aware there was a problem with one of the files produced by Desert Hill in advance of the proceeding. Specifically, the court came to understand that the QuickBooks file containing Desert Hill's accounting records had been produced late, and apparently in a

---

[31] Main Receivership Case, Dkt. 300 (Order for Supplemental Proceedings and Debtor Examination Against Desert Hill Ventures, Inc.).

[32] Main Receivership Case, Dkt. 297 (Order for Supplemental Proceedings and Debtor Examination Against Spring Grove Investments, LLC).

[33] *See, e.g.*, Main Receivership Case, Dkt. 300 (Order for Supplemental Proceedings and Debtor Examination Against Desert Hill Ventures, Inc.) ¶ 2.

[34] Main Receivership Case, Dkt. 302 (Stipulation re: Trust Deed to Secure Judgment in Lieu of Posting Bond Under Rule 62).

[35] Main Receivership Case, Dkt. 303 (Order Granting Motion to Stay Enforcement of Judgment Against David Hill).

[36] Main Receivership Case, Dkt. 299 (Order Vacating Supplemental Proceeding re: David Hill).

format in which the metadata had been stripped out.[37] The court convened an emergency status conference that same day to discuss the issue.[38]

At the beginning of the hearing, counsel for the Receiver stated that, instead of producing the past six years of financial books and records in native format, Desert Hill had produced an Excel spreadsheet that referenced a payment for QuickBooks, indicating QuickBooks was Desert Hill's accounting software, but a QuickBooks file had not been produced. When asked to provide the full QuickBooks file, Desert Hill had sent a file format which appeared to contain an extract or printout of a QuickBooks file, but not the full file with all the metadata.[39]

In response to the Receiver's concern that the QuickBooks file had not been provided in a native file format and without metadata, the court stated the following:

> It is crucially important, which is why I want the data in native format. So thank you. You had more to say. But if it's about the importance of getting the data in native format, I'm already with you. If you had something more to say unrelated to that, I have a question for [the Receiver's expert] Mr. Gomez. And I think what I'm doing giving [counsel for Desert Hill] Mr. Christiansen and Mr. Hill the benefit of the doubt, Mr. Hill the benefit of the doubt, what I hope I'm doing is facilitating a conversation to move us to the point where we need to be. Let me just emphasize my two priorities in this dispute. They are, first, the integrity of the data. We're going to ensure that we have data, reliable and complete data in a format we can utilize. Second, the efficiency of this process for out of concern for the expense to the Receivership estate. And every lost hour is an hour that costs our victims in this case. And Mr. Hill may or may not be among those in some fashion, but there are victims in this case who are not going to be further victimized by Mr. Hill. Mr. Fortney went to jail in this case because he made misrepresentations about facts. I'm not afraid to make referrals to the US Attorney's Office if we get to a point where people have misrepresented what's happened or what the facts are. And so I'm not jumping ahead to anything. I just want to be clear. We're going to have native format information in this case. And if there is evidence that people are manipulating data, that's going to be a

---

[37] The court does not remember how it became aware, before the emergency hearing, of this issue. Prior to the hearing, it understood the Receiver's position to be that its expert determined Desert Hill had removed metadata from the produced QuickBooks files.

[38] Main Receivership Case, Dkt. 305 (Amended Notice of Zoom Hearing Regarding Supplemental Proceedings).

[39] Main Receivership Case, Dkt. 314 (Transcript of Zoom Status Conference held on 5/25/21) [hereinafter Hearing Transcript] at 4:6–6:20.

> real problem. I'm not going to infer that, though the record with Mr. Hill and his company's compliance with requests to the [R]eceiver is not exemplary to this point. So I'm really not making – I'm not jumping to any conclusions. I just want to make sure everybody understands the gravity of the next moment.[40]

Immediately after, the Receiver's expert joined the Zoom call. The court stated the following:

> I'm not going to place you under oath. But will you help me and Mr. Christiansen? Mr. Christiansen is stuck in the same spot we're stuck in. He's trying to comply with a court order, and we need some clarity about what we have; whether it's in compliance with my order; and if it's not how it can become in compliance with my order. Can you help us understand that? And then, Mr. Christiansen, you can respond, you can ask Mr. Gomez questions. This is an open format.[41]

Following a discussion concerning how QuickBooks files are exported from different operating systems, it became clear the issue had to do with Desert Hill producing a QuickBooks file from a Mac computer that was not compatible with Windows.[42] The court confirmed: "So if Mr. Christiansen exports the same file he's produced to you but in a format compatible with Windows, does that give you access to everything you need?"[43] Following more discussion about the difference between QuickBooks files on Mac versus Windows, as opposed to an Excel file, the court stated:

> I think we are just having a miscommunication. I'm hoping that that's correct. I'm becoming confident that's correct. If the Live version of QuickBooks for Mac is essentially what we need but in the wrong format this is a simple solution. So let's resolve this question before we get to the question about the examination, because I agree with Mr. Christiansen. There's numerous reasons to have an examination once and not twice. That's the expense associated with this for everyone involved. Mr. Christiansen, do you need any more information from

---

[40] *Id.* at 11:21–13:4.

[41] *Id.* at 13:7–13:15.

[42] *Id.* at 13:16–14:13.

[43] *Id.* at 14:14–14:16.

> Mr. Gomez to just replicate the production you've made but in a different format?[44]

Mr. Christiansen stated he had enough information but needed time to review the file once it had been properly exported before sending it.[45] The court then stated:

> Mr. Christiansen, I'm satisfied that Mr. Hill, Desert Hill Ventures and Mr. Christiansen have attempted to comply once they were notified on Friday that there was an issue with the format. And now what we have is they have literally produced it in the format in which it's kept. And now we need a modification. Mr. Christiansen, you need time to make the conversion and then review it in whatever way you need to satisfy yourself, as an attorney that's responsible, and then provide it to the [R]eceiver's counsel with sufficient time for the [R]eceiver and the [R]eceiver's expert to examine the data to adequately prepare for an effective examination.[46]

Confirming there were no clarification questions from Mr. Christiansen, the court asked counsel for the Receiver if he had any additional questions. Counsel stated, "I feel that Desert Hill knew that it kept its books in QuickBooks in May and prior to that and should have produced its QuickBooks files before I brought it up, having just found that in the ledger that they had paid for QuickBooks."[47] So, before moving on to rescheduling the supplemental proceeding to allow time for the production of the correct file format, the court asked:

> Let's wrap up one other question in my mind before I get too carried away with complimenting everyone on their work. I infer from something that you said in your preliminary comments do you think there's not been – what I actually infer is you think there's been an attempt to conceal a source of data that you've requested from a tax preparer. Did I just come to the bench feeling like there was evil in the world and I was determined to rule it out, or were you trying to suggest something like that?[48]

Counsel for the Receiver replied:

---

[44] *Id.* at 15:6–15:17.

[45] *Id.* at 15:18–16:11.

[46] *Id.* at 16:12–16:23.

[47] *Id.* at 17:4–17:8.

[48] *Id.* at 17:10–17:18.

9

>Maybe some from Column A and some from Column B. I don't know, Your Honor. I have – I can't speak to someone else's motivation. I just know that your order was not exactly complied with. I do not know with absolute certainty what was produced to the tax preparers, and I won't know unless either Mr. Christiansen's client represents to me that he has produced the exact files that were produced to the tax preparers or I subpoena the tax preparers. But I will take his representation that he's produced the actual files that were produced to the tax preparers if that's what he's representing.[49]

The court replied:

>Maybe we're getting ahead of ourselves. I think that seems like part of the purpose of the examination that you're going to have once you have the QuickBooks files. You'll be able to see what the entries are, and Mr. Hill will be available and under oath to answer questions about what they represent, what was provided, when, to whom, what was done. So unless there's something more that we need to accomplish it seems to me that we need to get the data from Mr. Christiansen to review and to you and your expert and then the examination.[50]

Following this discussion, the parties and the court amended the date of the supplemental proceeding. Before the close of the hearing, counsel for Desert Hill stated:

>Your Honor, I'm troubled by what the court said about my client's history of compliance in this case. I don't know if the court is referring to something on my watch, but I would certainly hope not. I have tried since my entry to make sure that he and his business comply with anything and everything the court has ordered. If there's been an oversight on my part then I apologize. But I don't want this record to sit here with me being quiet with the court saying that my clients have not been compliant to something. I'm frankly not sure what the court's referring to.[51]

The court responded:

>So that's totally fair. I appreciate that, Mr. Christiansen. And I'm sure I came to the bench with some preconceived ideas about what had preceded this hearing in terms of compliance, and I appreciate your responses. And in terms – as you know, I think you know, we've had issues in this case, multiple issues with multiple people. I do have a general – one moment. I had a general perception that Mr. Hill and some of the Bliss family members have been less than cooperative and less than, I'm going to say less than fully cooperative. I was going to say less than fully candid, but I'm not sure about that. I don't really

---

[49] *Id.* at 17:19–18:4.

[50] *Id.* at 18:5–18:13.

[51] *Id.* at 23:1–23:11.

10

know that. I just have a general concern about what I view as sort of a pattern of delay and erecting barriers which have increased the time and expense of this litigation and this receivership in a way that has been unhelpful. So I'm sure that some of that is background noise. I don't have coming to the bench anything specific in mind about Mr. Hill or his – I know of his company's compliance with my orders since you entered an appearance. Just a general concern, and I'm sure I overshot with my comments early on. But I wanted to make sure I had everyone's full attention about the court's orders and my conviction that the receiver was going to have access to whatever information we needed to have access to so we could get the right result. I appreciate you raising the issue, Mr. Christiansen.[52]

The supplemental proceeding as to Desert Hill was subsequently held on July 1, 2021.[53]

### V. The Above-Captioned Ancillary Suits and Motions to Disqualify

The above-captioned cases were filed by the Receiver as part of her efforts to enforce the judgments against Desert Hill and Spring Grove. On July 20, 2021, the Receiver filed the first of the above-captioned cases, *Georgelas v. Hill et al.*, against Defendants James Michael Hill, Jr., David Hill, Lauren Hill, Cynthia Goosby, Penelope Hill, and the estate of James Michael Hill Sr. (hereinafter Hill Defendants).[54] The Receiver alleges the Hill Defendants are alter egos of Spring Grove, and that Spring Grove served only as a conduit for the distribution of fraudulent transfers from the Bliss Enterprise to the Hill Defendants.[55] The Receiver seeks to avoid fraudulent transfers and constructive transfers made from Spring Grove to the Hill Defendants and to amend the judgment against Spring Grove to make the Hill Defendants jointly and severally liable.[56]

---

[52] *Id.* at 23:12–24:11.

[53] *See* Underlying Receivership Case, Dkt. 309 (Transcript of Webex Debtor Examination).

[54] *Georgelas v. Hill et al.*, No. 2:21-cv-00441, Dkt. 2 (Complaint).

[55] *Id.* ¶¶ 12–19.

[56] *Id.* ¶¶ 54–96.

11

On November 10, 2021, the Receiver filed the second above-captioned case, *Georgelas v. Hill*, against David Hill, alleging he is the alter ego of Desert Hill and seeking to enforce the judgment obtained against Desert Hill through David Hill.[57]

On November 16, 2021, the Receiver filed a Motion to Transfer *Georgelas v. Hill* to the undersigned.[58] On January 10, 2022, the Receiver filed a Motion to Transfer G*eorgelas v. Hill et al.* to the undersigned.[59] In both Motions, the Receiver noted that all ancillary suits related to the Underlying Receivership Case have been transferred to the undersigned since the outset, for judicial economy.[60] David Hill opposed the Motion to Transfer *Georgelas v. Hill*, not on the basis of the factors concerning the transfer of cases[61] but rather because the court's comments at the May 25, 2021 emergency status conference "can reasonably be viewed as calling the Court's impartiality into question" under 28 U.S.C. § 455(a).[62]

On January 19, 2022, the court granted the Motion to Transfer *Georgelas v. Hill*.[63] In granting the Motion, the court acknowledged it did so over the objection of David Hill, explaining that the statute relevant to disqualifying a judge, § 455(a), would only be applicable were the case before the undersigned.[64] Receiving no opposition to the second Motion to Transfer, the court granted that Motion on February 14, 2022.[65]

---

[57] *Georgelas v. Hill*, No. 2:21-cv-00667, Dkt. 2 (Complaint).

[58] Underlying Receivership Case, Dkt. 311 (Motion for Transfer of New Ancillary Case Against David Hill).

[59] Underlying Receivership Case, Dkt. 319 (Motion for Transfer of New Ancillary Case Against James Michael Hill., Jr., et al.).

[60] *See id.* at 4; *see also* Underlying Receivership Case, Dkt. 171 (Order Granting Receiver's Motion to Transfer Cases).

[61] *See* DUCivR 83-2(g).

[62] Underlying Receivership Case, Dkt. 320 (Opposition to Motion to Transfer) at 7.

[63] Underlying Receivership Case, Dkt. 321 (Order Granting Motion for Transfer of Case No. 2:21-cv-00667).

[64] *Id.* at 2 n.2.

[65] Underlying Receivership Case, Dkt. 322 (Order Granting Motion for Transfer of Case No. 2:21-cv-00441).

On January 27, 2022, David Hill filed a Motion to Disqualify in *Georgelas v. Hill*, arguing the undersigned's comments in the May 25, 2021 hearing created the appearance of bias.[66] Similarly, on March 8, 2022, the Hill Defendants filed a Motion to Disqualify in *Georgelas v. Hill et al.*, also based on the undersigned's comments at the May 25 hearing.[67] The court turns to the parties' arguments.

## LEGAL STANDARD

Under Section 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[68] Section 455 is meant "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."[69] It sets forth an objective standard under which disqualification is appropriate where "the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality."[70] "In conducting this review, we must ask how these facts would appear to a well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."[71]

A judge has a "continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality."[72] However, "[t]here is as much

---

[66] *Georgelas v. Hill*, No. 2:21-cv-00667, Dkt. 14 (Motion to Disqualify Judge).

[67] *Georgelas v. Hill et al.*, No. 2:21-cv-00441, Dkt. 49 (Motion to Disqualify Judge).

[68] 28 U.S.C. § 455(a).

[69] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1310 (10th Cir. 2015) (internal citation omitted).

[70] *Id.* (internal citation omitted).

[71] *Id.* (internal quotation marks and citations omitted).

[72] *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993) (internal citations omitted).

obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."[73]

Indeed, "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion and similar non-factual matters" are "not ordinarily sufficient to require § 455(a) recusal."[74] Neither are "prior rulings in the proceeding, or another proceeding, solely because they were adverse."[75] Rather, "outward manifestations and reasonable inferences drawn therefrom" are relevant in this inquiry, and "the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue."[76] This analysis under § 455(a) "is extremely fact driven," meaning cases "must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[77]

## ANALYSIS

Although two separate Motions to Disqualify are before the court, as discussed below, the Motions put forth identical arguments. Accordingly, the court considers the Motions together.

In *Georgelas v. Hill*, David Hill seeks to disqualify the undersigned "because of grave concerns about the Court's appearance of partiality toward him stemming from the hearing held

---

[73] *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (internal citations omitted). Indeed, the Tenth Circuit has stressed: "section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice. The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley*, 1 F.3d at 993 (internal citations and quotation marks omitted).

[74] *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).

[75] *Id.*

[76] *Id.* (citing *Cooley*, 1 F.3d at 993).

[77] *Id.* (internal citation omitted).

14

on May 25, 2021."[78] Hill identifies the following two comments from the emergency status conference as indicative of partiality:

1. And Mr. Hill may or may not be among those [victims of the Bliss scheme] in some fashion, but there are victims in this case who are not going to be further victimized by Mr. Hill. Mr. Fortney went to jail in this case because he made misrepresentations about facts. I'm not afraid to make referrals to the U.S. Attorney's Office if we get to a point where people have misrepresented what's happened or what the facts are.[79]

2. And I'm sure I came to the bench with some preconceived ideas about what had preceded this hearing in terms of compliance, and I appreciate your responses. And in terms – as you know, I think you know, we've had issues in this case, multiple issues with multiple people . . . I had a general perception that Mr. Hill and some of the Bliss family members have been less than cooperative and less than, I'm going to say less than fully cooperative. I was going to say less than fully candid but I'm not sure about that. I don't really know that. I just have a general concern about what I view as sort of a pattern of delay and erecting barriers which have increased the time and expense of this litigation and this receivership in a way that has been unhelpful.[80]

Hill argues that "[t]here is no history of [him] failing to comply with Court orders, obstructing the administration of any case, or being found to have committed any wrongdoing."[81] Hill also argues that in the court's Summary Judgment Order, it used an analysis assuming that Hill acted at all times in good faith.[82] Hill avers that the hearing was "occasioned by counsel for the Receiver not understanding what their own expert was telling them about production while rejecting accurate representations made by Mr. Hill and his counsel about the issue."[83] Hill argues that the court has "put a 'black hat' on [him] and considered him one of the 'bad guys' in

---

[78] *Georgelas v. Hill*, No. 2:21-cv-00667, Dkt. 14 (Motion to Disqualify Judge) at 2. Additionally, Hill argues that because his counsel has "represented other defendants in ancillary proceedings, including some of the Bliss family members as well as Mr. Steve Devereaux, who both the Court and the Receiver have blamed for delaying the receivership proceeding after he raised a legitimate Article III standing issue," *id.* at 4–5, the court's comments implicate Hill's counsel as well as Hill, *id.* at 6–7.

[79] *Id.* at 4 (citing Hearing Transcript at 12:12–12:19).

[80] *Id.* (citing Hearing Transcript at 23:13–24:1).

[81] *Id.*

[82] *Id.*

[83] *Id.*

the case, going so far as to include [him] in the category of individuals who victimized others and implying jail time for what amounted to a misunderstanding."[84] He concludes: "The court's comments can reasonably be viewed as calling the Court's impartiality into question, or at the very least question the appearance of impartiality and propriety in the proceedings."[85]

The Hill Defendants' Motion to Disqualify, filed in *Georgelas v. Hill et al.*, is functionally identical to the Motion filed in *Georgelas v. Hill*. The Hill Defendants' Motion identifies the same two comments made at the May 25, 2021 hearing,[86] and argues that because of the comments, "the Court expressly stated its preconceived negative view of [David] Hill."[87] The Hill Defendants similarly conclude that the court's comments "can reasonably be viewed as calling the Court's impartiality into question, or at the very least question the appearance of impartiality and propriety in the proceedings against [David] Hill."[88] The Hill Defendants do not argue the court's comments suggest bias toward the Defendants aside from David Hill.[89]

The court disagrees that its comments, in context, create the appearance of partiality toward David Hill or create the appearance of impropriety. As an initial matter, the court notes both comments relate to impressions gained during proceedings, not opinions derived from extrajudicial sources.[90] The Tenth Circuit has explained that "[o]rdinarily, when a judge's words

---

[84] *Id.* at 6.

[85] *Id.* at 7.

[86] *Georgelas v. Hill et al.*, No. 2:21-cv-00441, Dkt. 49 (Motion to Disqualify Judge) at 3–4 (citing Hearing Transcript at 12:12–12:19, 23:13–24:1).

[87] *Id.* at 5.

[88] *Id.* at 6.

[89] *See generally id.*

[90] Under the extrajudicial source doctrine, recusal may be appropriate where a judge bases his opinion on events occurring outside of the proceedings, whereas opinions deriving from within proceedings will "sometimes (albeit rarely) suffice" for recusal. *See United States v. Liteky*, 510 U.S. 540, 554 (1994). Accordingly, the Tenth Circuit has found recusal necessary where a judge shared his opinion on events related to a pending case on "Nightline," a national television program, *Cooley*, 1 F.3d at 990, and where a judge presided over the criminal trial of a co-conspirator in the Oklahoma City Bombing when his own chambers had been damaged in the attack, *Nichols*, 71

or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias."[91] As such, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[92] The court's comments at the May 25, 2021 hearing, taken in context, did neither.

The full context of the first comment was the court sharing its preliminary views about the issue that had necessitated the emergency hearing.[93] The court emphasized the gravity of the Receiver's concern surrounding Desert Hill's apparent failure to comply with the court's Order,[94] especially given the complex past procedural history of the Receivership Case, including the fact referrals had been made to the U.S. Attorney's Office when other parties failed to comply with court orders.[95] The court's comment that "there are victims in this case who are not going to be further victimized by Mr. Hill" followed from the statement counsel for the Receiver had just made that Desert Hill had apparently failed to comply with the Court's order, and served to remind the parties that the ultimate goal of the Receivership was to compensate victims of the Bliss scheme. These initial comments enabled the parties to focus on the issue at

---

F.3d at 349–50.  In both cases, the Tenth Circuit explained these extrajudicial sources of opinion would cause a reasonable observer to doubt the judge's impartiality, regardless of how impartially the judge had conducted the proceedings.  *Cooley*, 1 F.3d at 995; *Nichols*, 71 F.3d at 552.

[91] *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (citing *Liteky*, 510 U.S. at 554–56).

[92] *Liteky*, 510 U.S. at 555.

[93] *See* Hearing Transcript at 11:21–13:4.

[94] Underlying Receivership Case, Dkt. 300 (Order for Supplemental Proceedings).

[95] Hearing Transcript at 12:15–12:19; *see also* Underlying Receivership Case, Dkt. 84 (Memorandum Decision and Order) (making referral to U.S. Attorney's Office).

hand—determining how to ensure Desert Hill would comply with the court's Order—and identify why compliance had not yet been achieved.

Additionally, to the extent these preliminary comments expressed any impatience or tone of warning, that would not establish bias: "Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."[96] In other words, the court "did not display a deep-seated antagonism which would make fair judgment impossible."[97] It simply made the context and gravity of the emergency hearing clear. A reasonable person, accounting for all these circumstances, would not harbor doubt about the court's impartiality.[98]

The context of the second comment was the court responding to Desert Hill's counsel's concern about the first comment. The court explained the comments at the opening of the hearing were preliminary views and concerns based on the past record in the case, and stated the court "had a general perception that Mr. Hill and some of the Bliss family members have been less than . . . fully cooperative," and added it had "a general concern" about "a pattern of delay and erecting barriers which have increased the time and expense of this litigation and this receivership in a way that has been unhelpful."[99] The court immediately clarified: "I don't have

---

[96] *Liteky*, 510 U.S. at 555–56.

[97] *Id.* at 555.

[98] Similarly, to the extent Hill's counsel argues the comments reflect bias against him, taken in their entire context, the objective observer would not find reason to doubt the court's impartiality. In fact, the court stated multiple times during the hearing that it understood Mr. Christiansen was doing everything in his power to help his client comply with the court's Order. *See* Hearing Transcript at 13:7–13:12, 15:6–15:14, 16:6–16:25.

[99] Hearing Transcript 23:18–24:1.

18

coming to the bench anything specific in mind about Mr. Hill or his – I know of his company's compliance with my orders since you entered an appearance. Just a general concern, and I'm sure I overshot with my comments early on. But I wanted to make sure I had everyone's full attention about the court's orders and my conviction that the [R]eceiver was going to have access to whatever information we needed to have access to so we could get the right result."[100] In other words, as discussed above, the court had made preliminary comments to be clear about the stakes of the hearing given the history of the case and the goals of the Receivership, but did not express antagonism or bias toward Hill.

Moreover, the statement that Hill "had not been fully cooperative" reflected the court's understanding at the outset of the hearing that Desert Hill had not produced a QuickBooks file with metadata intact, as the court's Order for Supplemental Proceedings required Desert Hill to do.[101] While it became clear during the hearing that Hill was in compliance with the Order, at the outset, that was not yet clear. All that was certain at the outset was that Hill had yet to fully comply with the court's Order, and the court wanted to ensure the parties were clear on the consequences of not complying with an order given the history of the litigation. Again, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[102] An objective observer would not find deep-seated favoritism or

---

[100] *Id.* at 24:3–24:10.

[101] Underlying Receivership Case, Dkt. 300 (Order for Supplemental Proceedings) ¶ 2.

[102] *Liteky*, 510 U.S. at 555. The Supreme Court noted an example of impermissible bias was "the statement that was alleged to have been made by the District Judge in *Berger v. United States* . . . a World War I espionage case against German–American defendants: 'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.'" *Id.* (internal citation omitted). While Section 455 motions are "extremely fact-driven" and must be decided on the basis of their own facts, not circumstances of prior proceedings, *Nichols*, 71 F.3d at 351, the example illustrates that demonstrating "deep-seated

antagonism in comments accurately identifying what had happened in current proceedings and explaining the court's preliminary views in a way that enabled the parties to quickly resolve the issue at hand.

At bottom, Hill takes issue with the court's preliminary view of the compliance issue at the May 25, 2021 emergency hearing, including statements about the stakes of noncompliance with court orders which were highly relevant to the Receivership Case. But the court's preliminary statements at the start of the hearing were just that—preliminary statements intended to invite argument on why the court's initial view may be wrong. The court's comments in this case would not lead a reasonable person, knowing all the relevant facts and circumstances, to question the undersigned's impartiality.

## CONCLUSION

For the reasons explained above, neither Hill nor the Hill Defendants have shown sufficient grounds upon which an objective observer would question the impartiality of the undersigned. The Motions to Recuse[103] are, accordingly, DENIED.

SO ORDERED this 6th day of May, 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

favoritism or antagonism" is a high bar, one that the court's stated concern about compliance with court orders does not meet.

[103] *Georgelas v. Hill et al.*, No. 2:21-cv-00441, Dkt. 49; *Georgelas v. Hill*, No. 2:21-cv-00667, Dkt. 14.